May it please the Court, my name is Lawrence Goodman. I represent United Food&Commercial Workers, Local 1776. I'd like to request four minutes for rebuttal. That's fine. Your Honors, as we stand here today, we are approaching the 50th anniversary of the United States Supreme Court decisions in the Steelworkers Trilogy. As you know, in those cases, the Supreme Court established and enunciated federal labor policy as being supportive and favoring arbitration and the private dispute mechanism form of the party as the labor policy of the country to support labor peace and stability. The purpose of this policy, among other things, is – Clearly, there's a presumption of arbitrability and the – when you – you have courts that have looked at – well, for example, the Litton case, which says, okay, if the – if clearly the collective bargaining agreement does not apply, then there is no presumption of arbitrability. And in effect, what this court, this district court, did here was make a determination that there was – the collective bargaining agreement did not apply. The question, I guess, for you is, is there a good, rational argument that it does apply such that you should have the presumption of arbitrability back in play? Well, yes, there is, Your Honor. And the first answer is that Litton does not apply to this case. Litton is a case that involves an expired collective bargaining agreement. In the Litton case, the Supreme Court itself recognized that it was going – it would permit an inquiry into the merits of a grievance. In the expired contract context, because the court – the majority of the court was concerned that – Let's talk about what – what in this collective bargaining agreement, or the three of them, all of which are the same, in effect, what says that the parties have agreed to arbitrate whether or not Eckert stores acquired by Rite Aid gives you the right of access? Where is it found in the CBA? What the collective bargaining agreement says is that the parties have agreed to arbitrate all issues of interpretation of the agreement. That's what the collective bargaining agreement says. But if it's not in the agreement – I was going to – I'm saying the same thing you're saying, so – Oh, go ahead. No, you go ahead. Yeah. If it's not in the agreement, then if the parties haven't agreed to arbitrate it, where is it found in the agreement, is what I ask you, Mr. Goodman. Well, you asked where was the agreement to arbitrate. And the agreement to – No, I asked where the parties agreed to arbitrate the access clause to the Eckert stores. That's what I asked you. In other words, is it in either the recognition clause, the observation clause, or the – Privilege. Privilege clause. Well, we argue, the union argues, that it is in all three clauses that the right to have access to those stores which are covered by the geographic scope of the collective bargaining agreement flow from all three of those clauses. In other words, the recognition clause says that the right aid recognizes the union as the sole and exclusive bargaining agent for the purposes of bargaining in the bargaining for all full-time and part-time employees employed at right aid stores. Now, the question is, are these – I guess the question is, are these newly acquired stores that previously were Eckert stores, are they, for purposes of this agreement, considered to be right aid stores? Well, again, I – we believe you're – What's the answer to that? I mean, are these newly acquired – Yes. Yes, they are. That's – Is there any doubt about that? There is no doubt about that. For purposes of applying the additional stores clause in this collective bargaining agreement, this is the same clause which is in virtually every other retail, grocery store, collective bargaining agreement in the country. That's how – that's how they work. That's how arbitrators – Is it in this agreement? It's absolutely in this agreement. Is the access clause to be found in this agreement? The access clause, Article V, is found in this agreement, and there's – Say that again, please. The access clause, Article V, is in this collective bargaining agreement, number one. Number two – Will you want to read it to me then? Okay. The access clause gives the union the right to have access to the stores for the purpose of ensuring that the collective bargaining agreement is complied with. Now what does that have to do with access to the Eckerd stores? As I understood the right aid stores in order to find out whether or not the agreement was being adhered to, which is a vastly different thing than saying we can go into stores that were never a part of this and which we have not agreed to arbitrate to find out if they want to join the union. Well these are not Eckerd stores anymore. These are right aid stores, and these are right aid stores within the geographic scope of the contract. Now having said that, the AT&T analysis for determining whether or not something is arbitrable is to look first, is there a broad clause? The district court found there was. Is there evidence either express or other forceful evidence that the parties intended to exclude the interpretive questions being raised by the grievance? There is no such evidence. The district court didn't find any such evidence. In fact, in the no strike clause there is an exemption from arbitration for issues relating to no strike, and this court and other courts have held that the fact that there is an express exclusion in one part of the contract means that the parties knew how to bargain for an exclusion of a topic from arbitration, and they didn't do it here. This is a broad clause. We believe, the union believes on the merits of the grievance that we have these rights. What we're talking about now is not the merits of the grievance, because the merits of the grievance are normally determined by the arbitrator. If the parties have agreed to arbitrate the particular matter, if the parties have not agreed to arbitrate, then the court decides this, which is what the district court did in this case, and found that under the prevailing authorities, including the Supreme Court, the parties had not agreed to arbitrate, so that it's not for the arbitrator. It's for the court to decide, and I want to know, and I have asked you, where I will find in the agreement a clause that says that you, that the union and Rite Aid have to arbitrate the access to the Eckerd stores, the five or six of which were acquired after the agreement. You will not find that clause in that contract. That's my point. You will not find the clause that says the parties have to arbitrate a dispute about the wage rates. You will not find a clause that says the parties will arbitrate a dispute about discharge. What you will find is a clause that the parties will arbitrate all issues of contract interpretation. Well, now, wait a minute. Contract interpretation of a specific collective bargaining agreement. Of a specific term of the collective bargaining agreement. Yeah. And we argue that Article II, Article V, and Article XV give us the right to have access into these stores. Now, we may be right. We may be wrong. That's the call for the arbitrator. That's what the call for the district court to determine whether the arbitration clause covers the issues that the union says should be arbitrated at this time. Let me ask you something, Mr. Grossman. Let us suppose hypothetically that Rite Aid said there can be no smoking in 100 feet from each Rite Aid store. I will grant you that that does not appear in the CBA. Would the court have the right to say, well, the parties never arbitrated this, they never agreed to arbitrate this, so that it is not for the arbitrator to say whether that's right or wrong. It is for the court to determine whether they agreed to arbitrate it. Am I wrong on that, sir? I believe you are, Your Honor. Okay. Again, it would depend on what the grievance is if the union filed, say, a grievance that caused an employee with smoking within 100 feet of the store. And was fired. And was fired or that the employer violated the recognition clause because it didn't bargain with the union before instituting this no smoking policy. Our position is that the interpretive question is whether or not Article, in that case Article II, implies or doesn't imply a duty to bargain. But that's a merits-based question. You are subsuming that it's merits-based, but it also goes to what is covered by the arbitration clause. Now, I think there are instances, and I think this is one instance, where in determining whether the grievance is covered by the collective bargaining, the collective bargaining agreement, you determine that this type of grievance is not covered by the collective bargaining agreement because it is not covered by any of the provisions of the collective bargaining agreement. And in so deciding, you are also deciding the merits. But the core issue is arbitrability. Is this arbitrable because this requires a construing of the collective bargaining agreement? And that's the exact point the Supreme Court addressed in AT&T. And at the end of AT&T, the Supreme Court said the way they structured the issue, the inquiry into arbitrability, is the issue in this case is whether because of express exclusion or other forceful evidence, the dispute over the interpretation of Article, in this case it was Article 20, of Article 20 of the contract, the layoff provision, is not subject to arbitration. We have a dispute about Articles 2, 5, and 15. And it's incumbent on the employer under AT&T for the employer to demonstrate how those disputes are excluded from arbitration. We have a broad clause. There's a presumption of arbitrability. And the burden shifts to the employer. Thank you. Mr. Allison. Good morning, Your Honors. Andrew Allison for Rite Aid of Pennsylvania. You've had a couple of other similar lawsuits in a western district in New York and a southern district in New York and you've lost both of those. How are they different from this? Differences are what contracts were in dispute, Your Honor. Separate CBAs with different recognition clause provisions, wording was different. Also, one of those two cases, the SEIU 1199 case, had a separate neutrality agreement that was in play. And then in the Rite Aid of New York case, in that particular case, there was an express store access provision in the contract. But both of those decisions relied on broad arbitration clauses and presumptions of arbitrability, did they not? That's the standard, Your Honor. But you take those standards to the agreement between the Rite Aid of Pennsylvania, Inc. and 1776, does not have store access. But it does have a recognition clause that literally applied, covers a situation where it says that the Union 1776 will be the exclusive bargaining agent for all full and part-time selling and non-selling associates employed at Rite Aid stores within the counties identified. Your Honor, the recognition clause defines... Are these stores, they still have the Eckerd sign up there, is that it? Your Honor, my understanding, I could be wrong by a store or two, is that at this point... Speak up if you will, sir. I apologize. I believe that at this point, all or almost all of the Rite Aid stores have been, Eckerd stores have been rebranded as Rite Aid stores. So don't they technically, or at least literally, fit within the recognition clause here? They would fit in the recognition clause in terms of the purpose of that clause. That clause does not, and it is silent as to neutrality, it is silent as to store access. Recognition clause, after acquired store clause, what that does, it defines certain aspects of the relationship... I mean, that sounds like you're arguing the merits now, which is not what the court should be determining at the outset. I mean, if there's one thing we know from steelworkers, it's the outlier case that allows you to get into the merits. I'm not arguing the merits, Your Honor. The subject matter of this dispute is store access. But the point is, my point to you is on the recognition clause. Isn't there an argument? Not only does this literally apply, but it should continue to apply. Whether you win or not, if there's an argument on that, then isn't there a presumption of arbitrability? Your Honor, the issue here is not, in the company's view, the recognition clause in terms of... No, they're arguing the recognition clause. How are they so categorically wrong at the outset that they can't make an argument that can possibly win, so therefore the court should not recognize, it should go against the presumption of arbitrability? The recognition clause, after acquired store clauses, what they do is they act as a waiver to the secret ballot election under the NLRA. That is all they do. They do not afford neutrality. They do not afford store access. The union is trying to bootstrap store access onto a possible waiver of a right to a secret ballot election. Are you saying that the recognition clause applies after the union has been recognized as the collective bargaining representative of the employees? The contract itself, the CBA, does not apply until the union is recognized as the representative or the associates in the stores. And then the representative clause kicks in, but until the union is recognized, the representative clause is inapplicable to request for access to determine representation. Your Honor, under the current contract, there is no right of access for solicitation. The question is, but there's an argument the other way, and if there's an argument the other way, and it's not so implausible that you don't even want to recognize it, isn't what the Supreme Court has told us is that you must engage a presumption or have a presumption of arbitrability? And only the most forceful evidence the other way. In other words, the question here is, how's the playing field? The Supreme Court has set the playing field in favor of arbitration. That is correct. And if there's one thing we've known from certainly the last 26 years, it's arbitration, arbitration, arbitration almost always wins in the Supreme Court. This even precedes that. And so in this case, where is the most forceful evidence that you have that this is not arbitrable? The most forceful evidence is the express language of the contract. You have Article 5 that talks about store access to see whether the terms of the agreement are being observed. Until the union is the bargaining representative for the store associates. Where does the recognition clause say that here? The recognition clause says that, I'm not even going to read it again, it recognizes the union for all Rite Aid stores in the territory, period. This is now a Rite Aid store in the territory. If perhaps it was continued to be an Eckerd store, maybe you've got an argument. But it's now a Rite Aid store. Because with that language, what the law requires is that there be shown a majority support by the associates within that store before the union can be their bargaining representative. That language has no legal impact. You know what, you might be right. That might be a good argument. That's the merits and that's what the district court, one should argue, should not get into. Litton was a, you know, people take off on Litton. Litton was a case where you clearly had 12 months had passed since the collective bargaining agreement had ceased to exist. This bargaining agreement still existed at the time of the acquisition of the Eckerd stores, correct? Correct. It expired in 2008, about a year after. So what can you take, what cases support you? I think Roman Haas supports us. I was on the panel on Roman Haas and I'm telling you, I don't see how it supports you. Roman Haas had two contracts. You had one that dealt with benefits that did not have an arbitration clause. Another that dealt primarily with wages, hours and working conditions and the union was trying to, and that had an arbitration clause, and the union was trying to bootstrap itself into that particular agreement even though it had an agreement that specifically dealt with benefits, risks of benefits. But in the Roman Haas case, this court did look at the language of the contract. They did an analysis of working conditions. The language of the contract, what we said was that it is crystal clear that benefits don't deal with wages and hours. But that required an interpretation, not just the merits, but interpretation. That was so clear on its face. Where is this clear, so clear on its face that nobody can go the other way? There is no language in that agreement. I just quoted your language in the agreement. They possibly could be construed the other way. They're not stupid. If the recognition clause is so clear, why is it that your friends on the other side have to include the privileges clause and Section 5 as well in order to meld together something that would indicate that you had agreed to arbitrate? Your Honor, I think it's a stretch to bring those all three together. What? To bring those three clauses together to support arbitration, I believe is a stretch. Of course it's a stretch. That's why the recognition clause doesn't say it all. Isn't that your answer? It doesn't say a word about that. You just got another softball. Yes. You don't argue with softballs. Well, the Supreme Court has said that unless the parties have agreed to arbitrate, it is for the court to determine the relevant clause that is an issue. Is that not so? Correct. And you are telling us that you never agreed to arbitrate the access clause to the Eckert stores. We never agreed to arbitrate access to non-union stores for the purpose of arbitration. And there is no provision in the collective bargaining agreement which deals with access to non-union stores. Correct. And don't you just say that to us and sit down? Thank you. Mr. Goodman. AT&T, we believe, is quite clear. If an issue is not excluded from the arbitration, from a broad arbitration clause, and there's no other agreement to exclude like there is with the no-strike clause in this contract, it is presumed to be arbitrable. Directing your attention specifically to the additional stores clause, the recognition clause, it does on its face say we represent that group. The National Labor Relations Board has put some gloss on it that we have to demonstrate a majority. At what point in time? That is, at what point in time? At whatever point in time, we're able to demonstrate a majority. Now, our position is, and this is consistent with what other articles. That's why you wanted to get into the Eckert stores. They were not Eckert stores at the time we wanted to get in. They were Rite Aid stores. We did not enter any Eckert stores under this clause. In July of 2007, Rite Aid bought out Eckert and started to convert the stores to Rite Aids. And each dispute involves going into a Rite Aid store. And what we presented to the district court was evidence that the practice of the parties, the understanding of the parties in giving meaning to the recognition clause, to the additional stores clause, meant that not only did Rite Aid have to recognize us when we got a majority, but they have to not interfere with our getting a majority. You went into Rite Aid stores where, former Eckert stores, now Rite Aid stores, where the employees were not represented by the union, right? Because if they were, you wouldn't need access. That's correct. But that is the practice. That is the practice that has existed between the parties for decades. Where is it in the collective bargaining agreement that you have a right to access to employees who are not represented by the union under the collective bargaining agreement? Collective bargaining agreements do not spell out all parts of a- Well, they spell out different things. They spell out different- This one has an arbitration clause that says it applies to the provisions already in the collective bargaining agreement. Right? Yes. And where in the collective bargaining agreement is there a provision that applies to stores with employees who are not represented by the union? We say the additional stores clause is that clause because on its face- Now, this is under representation or observation? Article 2. The recognition clause, Article 2. The language Judge Ambrose read before. Okay, so if the employees are already represented by the union, why do you need access to the store? You're saying that the recognition clause, the employer recognizes the union as a sole and exclusive bargaining agent for purposes of bargaining in the bargaining unit in respect to rates of pay, blah, blah, blah. So you are talking about recognizing the unit, the union to bargain about rates of pay where the union has been determined to be the collective bargaining representative of the employees. Your Honor, that is not how those clauses work. That is not how they've worked in this industry. That is not how they've worked- By the language that we're looking at? The language that you're looking at on its face says that the union is the representative of the employees at that store. We wouldn't- and if we applied that language literally, we wouldn't- Then why do you need access to the store to enlist the employees to vote for the union? Because the NLRB has said, and the D.C. Circuit, when it remanded the Kroger case to the NLRB in 1975, said that those clauses cannot be literally applied. There has to be some type of non-NLRB procedure which we leave up to the parties. And our position in this case is that that language is basically rendered ambiguous by the Kroger gloss, and you need to look to the past practice of the parties to determine what rights the union does or doesn't have. And that's with respect to enforcing that clause. Now, that is a merit-based decision. I understood that there were some access clauses of the kind that you wish were in this agreement, in other agreements with Rite Aid. Am I wrong on that? That's an interesting point, Judge. Other UFCW locals have negotiated- No, I just answered my question. Am I wrong in understanding that there were some CBAs with Rite Aid which contained access clauses that would have obviated this litigation? Not with Local 1776, but, yes, the cases involved in the Western District, I believe there was that language. Now, in that case, ironically, that didn't stop Rite Aid from going to- That didn't have a recognition clause? It did have a recognition clause, and that- So why did they need it? Why did they need an access clause? What? She said why did they need an access clause.  Why in the real world, Your Honor, is we have, we believe, a practice that dates back decades. We didn't need it. It was never an issue. It was never an issue until 2007, and Rite Aid brought out Eckert's. These other bargaining units, I don't know if they're new. I don't know the history of how that clause got into that contract. They had the access clause, and you didn't. Because we didn't need it, and as a new, and if these are newer bargaining units, then they might want to nail down in the absence of a past practice, past bargaining history between the parties, something that we didn't need. We didn't. You submitted a, I think it's an appendix 249 to 64, an arbitrator's decision that interpreted a similar, almost very similar recognition clause as imposing on the company the obligation to grant the union access to employees in newly acquired stores. What's the reasoning of the arbitrator in that case? The reasoning of the arbitrator is that essentially what I was saying before is that the loss placed on the additional stores clause by Kroger, that there has to be some evidence of majority before the union automatically gets to represent that store. And let me be clear. When the union gets the card majority under a Kroger clause and they demonstrate the majority, the contract automatically applies to that new store. And what the NLRB said in Kroger is, well, we want to make sure that employees have first expressed some, have expressed their desire through card check or some other procedure that they, in fact, want the union. So what the arbitrator in the case I cited and the arbitrators in the cases that that arbitrator cited all recognized that to give meaning to the promise that the union gets to represent new stores as they come online is that the employer, at a minimum, can't interfere with the union's ability to sign people up. And beyond that, in that case, there was evidence, as we believe there is in our case, of a past practice that that was how the parties in that other, in the cited case, treated this issue. Thank you. Are there any decisions of either arbitrators or courts that you don't get access under the current, the CBA, the way it's currently structured? Not that I've seen. And is this arbitrator's decision the only one that gives it? That arbitrator's decision cites about eight or nine others. I'm aware of another one that was recently issued. Again, finding that there's a right of access under the additional stores clause. And I would point out that at least one of the decisions cited in the arbitration decision I provided the court was affirmed on post-arbitrable review by a district court in the District of Oregon. So you're saying that there are no decisions that you are aware of that say that go against you on the right to access with this type of agreement? That's correct. Now, Mr. Allison, do you know of anything that contradicts what he just said? Your Honor, I do not, but certainly we welcome the opportunity to. You want to put that answer on the record? I'm not aware of any statement here today, but we'd certainly be willing to submit supplemental filings to the court. Thank you. If you do know of anything, then would you submit it to us? We will do that, Your Honor. Within the next five business days? Certainly. Thank you. Thank you to both counsel. Your Honor, if I may, may I submit the District of Oregon decision? That's fine. Thank you. Again, within five business days. What did he ask? District of Oregon decision. A decision on that issue. Thank you. Please rise. This court stands adjourned until Tuesday, November 17th at 1 p.m.